EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jorge Rivera Camacho<br><br>Peticionario<br><br>v.<br><br>Publi-Inversiones de Puerto Rico<br><br>Recurrida | 2026 TSPR 54<br><br>218 DPR ___ |

Número del Caso:  CC-2025-0527


Fecha:  21 de mayo de 2026


Tribunal de Apelaciones: Panel Especial


Representantes legales de la parte peticionaria:

    Lcda. Monique J. Díaz Mayoral
    Lcda. Vilma María Dapena Rodríguez


Representantes legales de la parte recurrida:

    Lcdo. Dimitri González Izquierdo
    Lcdo. Cristopher Santiago Contreras


Materia: Derecho Procesal Apelativo – Deber del Tribunal de Apelaciones de velar por la adhesión fiel a su mandato en aras de proteger el trámite ordenado y expedito de los litigios.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jorge Rivera Camacho

    Peticionario

       v.

Publi-Inversiones de
Puerto Rico

    Recurrida

CC-2025-0527

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 21 de mayo de 2026.

Los foros adjudicativos de primera instancia están obligados a acatar los mandatos del Tribunal de Apelaciones, tal como este debe honrar los nuestros. Cuando un tribunal revisor decide un asunto, los magistrados de jerarquía inferior generalmente carecen de discreción para apartarse de ese dictamen. En esa línea, un tribunal apelativo debe exigir el cumplimiento de su mandato. En consecuencia, nos corresponde resolver si el Tribunal de Apelaciones erró al negarse a revisar una resolución del Tribunal de Primera Instancia dictada en contravención de su mandato previo.

I

El 10 de agosto de 2018, el Sr. Jorge Rivera Camacho presentó una demanda contra Publi-Inversiones de Puerto Rico, Inc. (Publi-Inversiones) sobre despido injustificado y discrimen por razón de edad, al amparo de la Ley Núm. 80 de 30 de mayo de 1976, infra, y la Ley Núm. 100 de 30 de junio de 1959, infra. Además de requerir el pago de la mesada correspondiente y otros remedios, solicitó el pago de honorarios de abogado equivalentes a una suma no menor del veinticinco por ciento de la compensación.

Luego de un litigio extenso, el 1 de mayo de 2024 el Tribunal de Primera Instancia notificó una *Sentencia* por la cual declaró con lugar la causa de acción de despido injustificado y condenó a Publi-Inversiones al pago de una mesada ascendente a $102,729, así como al pago de honorarios de abogado equivalentes al quince por ciento de la compensación. A su vez, desestimó la causa de acción de discrimen por edad.

El 10 de mayo de 2024, el señor Rivera Camacho presentó un memorando juramentado para solicitar el aumento de la partida de honorarios de abogado. Arguyó que la concesión del quince por ciento era injustificadamente baja, pues no guardaba relación con el esfuerzo que empleó su representación legal durante seis años de litigación. Por ende, suplicó el incremento de los honorarios de abogado al veinticinco por ciento de la compensación.

En oposición, Publi-Inversiones adujo que procedía denegar el aumento de los honorarios. En concreto, sostuvo lo

siguiente: que los honorarios debían fijarse con base en el quince por ciento de la mesada; que el memorando no detalló las horas trabajadas y la tarifa a cobrar; y que la complejidad de la reclamación se debió a la insistencia infundada del peticionario de proseguir la causa desestimada de discrimen por edad.

El 18 de junio de 2024, el Tribunal de Primera Instancia confirió al señor Rivera Camacho un término de diez días para detallar el tiempo de trabajo invertido en el caso y la tarifa a cobrar por cada hora trabajada. En consecuencia, el 27 de junio de 2024 el señor Rivera Camacho solicitó la suma de $159,500 por concepto de honorarios de abogado. Detalló que invirtió un total de 797.5 horas en el caso a razón de una tarifa de $200 por hora. Así las cosas, el 28 de junio de 2024 el foro de origen emitió una resolución mediante la cual aumentó la partida de honorarios de abogado al veinticinco por ciento de la mesada.

En ese contexto, ambas partes recurrieron al Tribunal de Apelaciones. En lo pertinente, Publi-Inversiones señaló que el foro primario erró al aumentar los honorarios de abogado. Específicamente, sostuvo que era improcedente una concesión de honorarios mayor al quince por ciento, puesto que la causa de discrimen por edad fue desestimada. Además, arguyó que el señor Rivera Camacho no demostró que Publi-Inversiones presentara una defensa hostil y que el memorando no solo es irrazonable, sino que contiene entradas incorrectas.

Consolidados los recursos, el 24 de octubre de 2024 el Tribunal de Apelaciones dictó una sentencia. Además de

confirmar la decisión del foro primario en cuanto a la procedencia de la causa por despido injustificado y la desestimación de la acción de discrimen por edad, **revocó la resolución que aumentaba los honorarios de abogado al veinticinco por ciento.** Consecuentemente, **el foro intermedio concluyó que el Tribunal de Primera Instancia debía evaluar la razonabilidad del memorando de honorarios de abogado, antes de conceder cualquier cantidad adicional al quince por ciento dispuesto por ley.** A esos fines, ordenó lo siguiente:

> [P]rocede que el TPI examine detenidamente el memorando que presentó la representación legal del señor Rivera detallado de la descripción de sus tareas, las horas invertidas en cada tarea y la tarifa correspondiente a cada tarea. Luego deberá evaluar la razonabilidad de la cuantía adicional solicitada y determinar si procede otorgarla. Si el TPI determina otorgarla deberá consignar por escrito sus razones para llegar a determinada suma. Ap. del certiorari, pág. 162.

El 8 de enero de 2025, el Tribunal de Apelaciones remitió su mandato al Tribunal de Primera Instancia.

El 29 de enero de 2025, el señor Rivera Camacho reiteró su solicitud de honorarios de abogado ante el foro inferior. En esta moción, el peticionario acompañó como anejo el memorando radicado previamente que detallaba esfuerzos profesionales. En cambio, Publi-Inversiones nuevamente se opuso a la concesión de honorarios de abogado en exceso del quince por ciento. Además de repetir su postura previa, **arguyó, por vez primera, que el memorando fue presentado tardíamente.** Alegó que, según Ortiz Valle v. Panadería Ricomini, infra, la parte prevaleciente en una reclamación laboral dispone de un término de catorce días desde la notificación del dictamen

para presentar su memorando de honorarios por horas trabajadas. Según Publi-Inversiones, la solicitud de honorarios fue tardía porque, a pesar de que la sentencia del Tribunal de Primera Instancia se notificó el 1 de mayo de 2024, el memorando detallado se presentó el 27 de junio de 2024, es decir, cuarenta y tres días luego de vencido el término. Cabe resaltar que Publi-Inversiones no consideró para su argumento el memorando juramentado radicado el 10 de mayo de 2024. Igualmente, sostuvo que la solicitud reiterada el 29 de enero de 2025 fue tardía porque se presentó veintiún días luego de expedido el mandato del foro intermedio.

Por lo anterior, **el 22 de abril de 2025 el Tribunal de Primera Instancia declaró no ha lugar el memorando de honorarios de abogado del señor Rivera Camacho, por el fundamento de haberse presentado tarde.** Notablemente, el foro de primera instancia no indicó cuál solicitud de honorarios consideró para determinar la radicación tardía. Como resultado, sostuvo la cuantía originalmente concedida, equivalente al quince por ciento de la compensación.

En desacuerdo con la decisión, el 22 de mayo de 2025 el señor Rivera Camacho recurrió al Tribunal de Apelaciones mediante un recurso de *certiorari*. Alegó que el foro primario erró al incumplir con el mandato del Tribunal de Apelaciones y descartar el memorando de honorarios sin evaluar las gestiones profesionales y la tarifa correspondiente. Asimismo, planteó que erró al entender que el memorando se radicó a destiempo. Sin embargo, el 6 de junio de 2025 **el foro intermedio denegó expedir el auto discrecional.**

Insatisfecho aún, el 7 de agosto de 2025 el señor Rivera Camacho presentó el recurso de *certiorari* que nos concierne. En lo pertinente, sostiene que el Tribunal de Apelaciones erró al no acoger el recurso, puesto que debía revocar la resolución del Tribunal de Primera Instancia por incumplir con su mandato previo.

El 5 de diciembre de 2025, ordenamos a Publi-Inversiones mostrar causa por la cual no debíamos expedir el recurso discrecional. Oportunamente, la recurrida compareció para oponerse a su expedición. En resumen, manifiesta que el señor Rivera Camacho presentó tardíamente su memorando de honorarios de abogado y, además, que el mandato del Tribunal de Apelaciones no obligó al Tribunal de Primera Instancia a otorgar los honorarios adicionales, sino a evaluar su procedencia.

Examinados los autos, expedimos el recurso de *certiorari* peticionado y procedemos a resolver la controversia sin trámite ulterior, no sin antes precisar el derecho aplicable.

II

**A. *El mandato y la doctrina del mandato***

En tanto que este Tribunal no ha tenido la oportunidad de examinar la doctrina del mandato —conocida en el derecho común como el *mandate rule*— con independencia de la figura procesal del mandato, impartimos un análisis comparativo en aras de aclarar su aplicación al caso de autos.

De entrada, es crucial distinguir ambos conceptos. Por un lado, el mandato es un documento emitido por un tribunal

apelativo para instruir a un foro adjudicativo de jerarquía inferior sobre la disposición de la causa o los procedimientos ulteriores que ha de seguir. 16AA Wright et als*., Federal Practice and Procedure: Jurisdiction and Related Matters* Sec. 3987 (5th ed. 2025). Por su parte, el *mandate rule* es la doctrina jurisprudencial que, como norma general, requiere de un foro recurrido obediencia a las decisiones de un tribunal revisor. A. Crews, *The Mandate Rule*, 73 S.C.L. Rev. 263, 265 (2021).

En rigor, el mandato es una figura reglamentaria que permite ordenar una providencia específica a un tribunal de jerarquía inferior y tiene consecuencias jurisdiccionales de envergadura, mientras que el *mandate rule* se refiere al efecto del mandato, el cual establece la ley del caso para todas las incidencias posteriores en un caso. Así pues, ambos conceptos son caras de una sola moneda: si bien son complementarios, no se entrelazan.

### i. El mandato

Antaño, hemos definido el mandato como una "'[o]rden de un tribunal superior a uno de inferior jerarquía, notificándole haber revisado el caso en apelación y enviándole los términos de su sentencia'". Pueblo v. Serrano Chang, 201 DPR 643, 650 (2018), citando a Mejías *et al.* v. Carrasquillo *et al.,* 185 DPR 288, 300-301 (2012). En otras palabras, es el medio oficial que tiene un tribunal apelativo para informar su decisión al tribunal inferior y compelerlo a actuar en conformidad con tal dictamen. Pueblo v. Serrano Chang, supra,

pág. 650; Pueblo v. Tribunal de Distrito, 97 DPR 241, 246 (1969).

Por su naturaleza, el mandato es una figura propia del derecho procesal apelativo. En tal virtud, se encuentra delineado en el Reglamento del Tribunal de Apelaciones y en el Reglamento de este Tribunal. Para el 8 de enero de 2025, cuando el Tribunal de Apelaciones expidió el mandato en el caso de autos, la Regla 84 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, disponía en lo pertinente lo siguiente:

**Regla 84 – Moción de reconsideración; mandatos**
. . . .
(E) Transcurridos diez (10) días laborables de haber advenido final y firme la decisión del Tribunal de Apelaciones, el Secretario(a) enviará el mandato al Tribunal de Primera Instancia o a la agencia correspondiente, junto con todo el expediente original, cuando éste haya sido elevado.[1]

El mandato cobra relevancia especial en lo concerniente a los efectos de índole jurisdiccional. Colón y otros v. Frito Lays, 186 DPR 135, 153 (2012). Una vez se paralizan los

---

[1] La Resolución ER-2025-01, aprobada el 24 de abril de 2025, In re Aprobación Enmdas. Regl. TA, 2025 TSPR 42, 215 DPR __ (2025), enmendó la Regla 84 del Reglamento del Tribunal de Apelaciones para que, en lo relevante, disponga lo siguiente:

*Regla 84 – Moción de reconsideración; mandatos*
. . . .
(E) La Secretaria o el Secretario enviará el mandato al Tribunal de Primera Instancia o a la agencia correspondiente, junto con todo el expediente original, cuando este haya sido elevado. Esto ocurrirá: (i) una vez transcurridos diez días laborables de haber advenido final y firme la decisión del Tribunal de Apelaciones, o (ii) en cualquier momento anterior a dicha fecha, o a la fecha en que advenga final y firme la decisión, cuando, a iniciativa propia o a solicitud de parte, así lo ordene el Tribunal de Apelaciones por causa justificada. Íd., pág. 112.

Notablemente, el propósito de la enmienda fue otorgar discreción al Tribunal de Apelaciones para remitir el mandato en cualquier momento, sin tener que aguardar a que su decisión advenga final y firme. Por lo demás, la reglamentación del mandato permanece inerte. Véase, Íd., pág. 113, *Comentario: Enmiendas del 2025* de la Regla 84.

procedimientos ante el foro recurrido, ya sea por orden expresa del tribunal apelativo o por efecto de la presentación de un recurso, según sea el caso, el tribunal inferior pierde su jurisdicción para continuar los procedimientos relativos a la controversia recurrida. Pueblo v. Pérez, 159 DPR 554, 564 (2003); Pérez, *Ex parte* v. Depto. de la Familia, 147 DPR 556, 570 (1999). Por ello, será nula toda actuación del tribunal recurrido relacionada con el asunto paralizado. Colón y otros v. Frito Lays, supra, pág. 154; Pérez, *Ex parte* v. Depto. de la Familia, supra, pág. 570. Pero Cfr., Pueblo v. Rivera, 75 DPR 903 (1954).

A diferencia de otras órdenes del tribunal apelativo, este emite el mandato exclusivamente cuando dispone finalmente de todos los asuntos ante su consideración. Pueblo v. Pérez, supra, pág. 565 esc. 5; Pueblo v. Tribunal de Distrito, supra, pág. 246. Recibido el mandato, el tribunal recurrido readquiere jurisdicción para continuar los procedimientos, conforme a lo que haya dictaminado el tribunal mandante. Pueblo v. Pérez, supra, pág. 564; Pérez, *Ex parte* v. Depto. de la Familia, supra, pág. 571. Esto significa, a su vez, que el tribunal apelativo pierde su jurisdicción cuando expide el mandato. Piazza v. Isla del Río, Inc., 158 DPR 440, 456 (2003). Solamente en casos muy excepcionales "es concebible que un foro apelativo pueda válidamente ordenar la devolución de su mandato, a los fines de reabrir un caso que ya era final y firme, con el propósito de modificar un dictamen que por razones desconocidas por ese foro al emitirlo resultó ser crasamente erróneo e injusto". Íd., pág. 456.

### ii. La doctrina del mandato

La doctrina del mandato tiene sus raíces en la tradición legal de habla inglesa y encuentra un desarrollo significativo para nuestra jurisprudencia en la casuística y legislación estadounidense. Véanse, Sibbald v. United States, 37 U.S. 488 (1838); An Act to Establish the Judicial Courts of the United States, 1 Stat. 73, Sec. 24 ("[T]he Supreme Court shall […] send a special mandate to the circuit court to award execution thereupon".). En el ámbito federal, el mandate rule se interpreta como una versión particularmente restrictiva de la doctrina de la ley del caso. Crews, supra, pág. 266. En ocasiones los tribunales federales han expresado que la doctrina del mandato es un corolario de la ley del caso, DeJoria v. Maghreb Petroleum Exploration, S.A., 935 F.3d 381, 394 (5th Cir. 2019), mientras que en otras han indicado que se trata de una aplicación especial de la ley del caso, Demahy v. Schwarz Pharma, Inc., 702 F.3d 177, 184 (5th Cir. 2012). Cabe subrayar que la doctrina de la ley del caso expresa la práctica general de los tribunales de negarse a reabrir lo decidido firmemente. Félix v. Las Haciendas, 165 DPR 832, 843 (2005); Núñez Borges v. Pauneto Rivera, 130 DPR 749, 754 (1992).

En lo sustantivo, la doctrina del mandato impide que un foro adjudicativo de jerarquía inferior maneje el caso de forma contraria a lo decidido por un tribunal de jerarquía superior. In re Sanford Fork & Tool, 160 U.S. 247, 255 (1895); Pueblo v. Serrano Chang, supra, pág. 650; Mejías et al. v. Carrasquillo et al., supra, pág. 301. Recibido el mandato, el tribunal

recurrido carece de facultad para ignorarlo o modificarlo, ya que constituye la ley del caso entre las partes. Utah Pub. Serv. Comm'n v. El Paso Nat. Gas Co., 395 U.S. 464, 467 (1969). En virtud de lo anterior, la doctrina del mandato autoriza al tribunal de jerarquía mayor para compeler el cumplimiento de un mandato si una parte así lo solicita en un recurso posterior.

El efecto del mandato alcanza incluso aquellas cuestiones que, si bien no se litigaron, pudieron litigarse. Mejías et al. v. Carrasquillo et al., supra, pág. 302; Pan American v. Tribunal Superior, 97 DPR 447, 451 (1969). Véase, Fiddler v. Tribl. Contribuciones, 68 DPR 847 (1948). En otras palabras, remitido el mandato, el tribunal de jerarquía inferior carece de discreción para reconsiderar asuntos que, aunque pudieron traerse ante la consideración del tribunal apelativo, no se sometieron. Pueblo v. Serrano Chang, supra, pág. 651; Colón y otros v. Frito Lays, supra, pág. 153. Véase, Wright et als., op. cit., Sec. 4478.3 ("Nor may the district court be permitted to reconsider its own rulings made before appeal and not raised on appeal".).

No obstante, el tribunal de rango inferior mantiene discreción para reconsiderar asuntos ajenos al mandato, a saber: aquellos que no estuvieron expresa o implícitamente ante la consideración del tribunal revisor. Pueblo v. Serrano Chang, supra, pág. 651; Mejías et al. v. Carrasquillo et al., supra, págs. 302-303. Los asuntos explícitos son "los que surgen de la sentencia claramente y sin espacio a ambivalencias". Mejías et al. v. Carrasquillo et al., supra,

pág. 303. Por su parte, los asuntos implícitos son "aquellas cuestiones que, si bien no se litigaron, pudieron haberse litigado, aquellas que surgen del mandato mismo, así como aquellas que se deben realizar para que resulte efecto el mandato". Íd. Así pues, "[e]l pequeño ámbito que no queda incluido en el mandato son los únicos asuntos que el tribunal de inferior jerarquía podrá revisar". R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 489. Véase, Sprague v. Ticonic Nat. Bank, 307 U.S. 161 (1939).

Ahora bien, la doctrina del mandato, al igual que la doctrina de la ley del caso, tiene excepciones que permiten la inobservancia del mandato. Las excepciones de ambas son virtualmente iguales: (1) durante los procesos posteriores al mandato surge evidencia que modifica sustancialmente los hechos y la controversia del caso; (2) ocurre un cambio en el estado de derecho, y (3) la decisión previa es palpablemente errónea y puede causar una injusticia grave. Demahy v. Schwarz Pharma, Inc., supra, págs. 184-185; Mgmt. Adm. Servs. Corp. v. E.L.A., 152 DPR 599, 607-608 (2000). Sin embargo, el tribunal de jerarquía inferior deberá solicitar la autorización del tribunal de jerarquía superior para apartarse del mandato bajo estas excepciones, salvo que exista una razón clara y contundente que amerite el desvío con premura. Wright et als., *op. cit.*, Sec. 4478.3. Véase, Pueblo v. Tribunal de Distrito, supra, pág. 247.

Por último, cabe resaltar que la doctrina del mandato aplica únicamente en la relación entre tribunales de jerarquía

distinta. En cambio, el mandato de un tribunal apelativo constituye la ley del caso para ese mismo foro. Por ello, cuando un tribunal apelativo decida revisar su mandato previo, aplicará la doctrina de la ley del caso, pero no la doctrina del mandato. R. Hernández Colón, *op. cit.*, pág. 5. Véanse, Félix v. Las Haciendas, supra; Noriega v. Gobernador, 130 DPR 919 (1992).

### B. *El memorando de honorarios de abogado en reclamaciones laborales*

Nuestro ordenamiento jurídico prohíbe el cobro de honorarios de abogado a los empleados que reclamen contra sus patronos. Hernández Maldonado v. Taco Maker, 181 DPR 281, 295 (2011). Más bien, si el empleado prevalece en una reclamación laboral, recae sobre el patrono el pago de los honorarios. Íd.; Ortiz y otros v. Mun. de Lajas, 153 DPR 744, 751 (2001). En ese sentido, la Ley Núm. 80 de 30 de mayo de 1976, Ley sobre Despidos Injustificados, 29 LPRA sec. 185a *et seq.*, dispone que la cantidad mínima correspondiente a honorarios de abogado que debe otorgar el tribunal "nunca será menor del quince por ciento (15%) del total de la compensación o cien dólares ($100), la que fuere mayor". 29 LPRA sec. 185k. El quince por ciento aludido constituye una base mínima de compensación en honorarios de abogado, pero el adjudicador puede otorgar una suma mayor conforme a los criterios para determinar honorarios razonables establecidos en López Vicil v. ITT Intermedia, Inc., 143 DPR 574 (1997). Véase, Hernández Maldonado v. Taco Maker, supra, pág. 297.

En <u>López Vicil v. ITT Intermedia, Inc.</u>, <u>supra</u>, pág. 583, aunque resuelto al amparo de la Ley Núm. 100 de 30 de junio de 1959, Ley Antidiscrimen de Puerto Rico, 29 LPRA sec. 146 *et seq.*, decretamos que, cuando se justifique otorgar una cuantía mayor por concepto de honorarios de abogado en reclamaciones laborales, el tribunal podrá concederla basándose en una solicitud juramentada que detalle las horas trabajadas por la representación legal y la tarifa a cobrar por cada hora. El juzgador tendrá discreción para conferir sumas adicionales reclamadas en el memorando, siempre y cuando consigne por escrito sus fundamentos. <u>Hernández Maldonado v. Taco Maker</u>, <u>supra</u>, pág. 298; <u>López Vicil v. ITT Intermedia, Inc.</u>, <u>supra</u>, pág. 584. De esta manera, la cantidad otorgada será revisable en aras de evitar abuso de discreción. <u>Hernández Maldonado v. Taco Maker</u>, <u>supra</u>, pág. 297.

Antes bien, en <u>Ortiz Valle v. Panadería Ricomini</u>, 210 DPR 831 (2022), impusimos un término de catorce días, contado a partir del archivo en autos de copia de la notificación de la sentencia o desde la remisión del mandato en caso de trámite apelativo posterior, para solicitar honorarios adicionales en reclamaciones laborales. <u>Íd.</u>, pág. 845. En lo particular, dispusimos que la naturaleza de dicho término es de cumplimiento estricto. <u>Íd.</u>, pág. 844. Así pues, un memorando de honorarios de abogado sometido fuera de término sin justa causa no debe ser considerado por el tribunal. <u>Íd.</u>, pág. 845.

III

No nos corresponde decidir los méritos de la solicitud de honorarios de abogado en esta etapa. Más bien, debemos resolver

CC-2025-0527                                          15

si el Tribunal de Apelaciones erró al permitir que el Tribunal de Primera Instancia actuara en menoscabo de su mandato. Por razón de que el foro primario inobservó lo ordenado, procede devolverle el caso para que ejecute lo instruido por el foro intermedio.

El 24 de octubre de 2024, el Tribunal de Apelaciones dictó una sentencia final resolviendo todos los asuntos del caso. En lo pertinente, el tribunal apelativo revocó la resolución que aumentaba los honorarios de abogado al veinticinco por ciento y ordenó al foro primario evaluar en detalle el memorando de honorarios en cuestión, antes de conceder cualquier cantidad adicional al quince por ciento dispuesto por ley. Asimismo, el Tribunal de Apelaciones requirió del foro inferior los fundamentos de su prospectiva decisión por escrito, de manera que la razonabilidad de los honorarios a concederse fuera revisable.

El 8 de enero de 2025, el Tribunal de Apelaciones remitió su mandato al Tribunal de Primera Instancia. Sin embargo, el foro primario declaró no ha lugar el memorando de honorarios de abogado del señor Rivera Camacho y reinstaló la cuantía concedida originalmente, equivalente al quince por ciento de la compensación. Para esa decisión, el tribunal primario se fundamentó en la defensa de Publi-Inversiones de que el memorando fue radicado tardíamente. Antes bien, ese argumento nunca estuvo ante la consideración del Tribunal de Apelaciones. Así pues, el foro primario erró al considerar esa postura, pues, si bien la recurrida no la esgrimió antes, incidía sobre la médula de lo ordenado por el mandato. Es

decir, el argumento de la presentación inoportuna del memorando pudo litigarse antes de que el foro apelativo decidiera la controversia, pero no fue así.

En todo caso, la defensa de presentación inoportuna es improcedente. El 1 de mayo de 2024, el Tribunal de Primera Instancia notificó su dictamen final sobre la controversia. Luego, el 10 de mayo de 2024 el peticionario presentó el memorando de honorarios, aunque fue suplementado ulteriormente el 27 de junio de 2024 a solicitud del propio tribunal. Nótese que el memorando de 10 de mayo de 2024 nunca fue anulado, sino detallado. Igualmente, el mandato de 8 de enero de 2025 del Tribunal de Apelaciones requirió la evaluación del memorando original suplementado, no la presentación de un nuevo escrito. En consecuencia, el memorando fue presentado dentro del término de cumplimiento estricto de catorce días el 10 de mayo de 2024.

Con todo, para efectos de la doctrina del mandato, el tribunal inferior no invocó ninguna excepción que justificara desatender el mandato. No menos importante, no medió autorización del tribunal de jerarquía superior para que el foro primario se apartara del mandato. Mucho menos estamos ante una circunstancia clara y contundente que ameritara el desvío con premura. Por lo cual, el Tribunal de Primera Instancia carecía de autoridad para reconsiderar una cuestión decidida por el foro revisor. Por consiguiente, erró el tribunal primario al ponderar la postura de Publi-Inversiones y, consecuentemente, menoscabar el mandato.

Finalmente, el Tribunal de Apelaciones erró al negarse posteriormente a compeler el cumplimiento de su mandato. En aras de proteger el trámite ordenado y expedito de los litigios, así como la estabilidad y certeza del derecho, el tribunal intermedio debe velar por la adhesión fiel a su mandato. Véase, Torres Cruz v. Municipio de San Juan, 103 DPR 217, 222 (1975).

IV

Por las razones expuestas, se expide el auto de *certiorari* y se revoca la decisión recurrida y la resolución dictada por el Tribunal de Primera Instancia el 22 de abril de 2025. Se devuelve el caso al foro de origen para que cumpla con el mandato del Tribunal de Apelaciones remitido el 8 de enero de 2025, de forma compatible con este dictamen.

Se dictará Sentencia en conformidad.


                                    RAFAEL L. MARTÍNEZ TORRES
                                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jorge Rivera Camacho

    Peticionario

       v.

                         CC-2025-0527

Publi-Inversiones de
Puerto Rico

    Recurrida

SENTENCIA

En San Juan, Puerto Rico, a 21 de mayo de 2026.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se expide el auto de *certiorari* y se revoca la decisión recurrida y la resolución dictada por el Tribunal de Primera Instancia el 22 de abril de 2025. Se devuelve el caso al foro de origen para que cumpla con el mandato del Tribunal de Apelaciones remitido el 8 de enero de 2025, de forma compatible con este dictamen.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Candelario López emitió una Opinión de conformidad.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Jorge Rivera Camacho<br><br>Peticionario<br><br>v.<br><br>Publi-Inversiones de Puerto Rico<br><br>Recurrida | CC-2025-0527 | |

**Opinión de conformidad emitida por el Juez Asociado señor CANDELARIO LÓPEZ.**

En San Juan, Puerto Rico, a 21 de mayo de 2026.

Estoy conforme con la Opinión del Tribunal en este caso, pues entiendo que el foro apelativo intermedio estaba obligado a exigir el cumplimiento de su mandato. Ello, en aras de proteger el trámite ordenado y expedito de los litigios, tal y como menciona la mayoría de mis compañeros y compañeras de estrado. Igualmente, me parece en extremo importante puntualizar que, en nuestro ordenamiento, la figura del mandato no constituye una mera formalidad procesal. Por el contrario, representa el vehículo mediante el cual un tribunal revisor comunica su decisión y delimita los contornos dentro de los cuales debe continuar el litigio en el foro inferior. De ahí que su cumplimiento no sea opcional ni sujeto a reinterpretaciones discrecionales. De este modo, según se menciona en la Opinión, cuando un tribunal revisor decide un asunto, los magistrados de jerarquía inferior no tienen discreción para apartarse de ese dictamen.

Así lo enfatizamos recientemente al mencionar que, estén o no de acuerdo, los jueces de los foros inferiores deben seguir y respetar el dictamen de un foro superior. Véase *Cooperativa de Seguros Múltiples de Puerto Rico y Pentagon Federal Credit Union v. ELA*, 2026 TSPR 36, 218 DPR __ (2026). De hecho, en esa ocasión, indicamos que lo anterior es parte de nuestro sistema judicial jerárquico, "cuyo funcionamiento depende de que las decisiones de los tribunales de mayor jerarquía sean acatadas y ejecutadas por los jueces de jerarquía inferior". Íd., citando a *In re Candelaria Rosa*, 197 DPR 445, 468 (2017). Esto tiene su arraigo en que "[l]a autoridad y legitimidad del Poder Judicial descansa, necesariamente, en que se acaten sus decisiones y mandatos". Íd.

Por ello, estoy conforme con la determinación de la mayoría de que, ante un incumplimiento claro del mandato por parte del foro primario, el Tribunal de Apelaciones no podía rehusar intervenir. Su rol no se limita a revisar errores sustantivos, sino que incluye, velar por la ejecución fiel de sus propias órdenes. Permitir lo contrario equivaldría a convertir el mandato en una recomendación, desprovista de fuerza vinculante, lo cual es incompatible con la lógica del sistema apelativo.

Por otra parte, reitero la importancia de distinguir entre la jurisdicción para adjudicar un caso en sus méritos, y la potestad inherente de los tribunales para compeler el

cumplimiento de sus propios mandatos. De ordinario, un tribunal pierde jurisdicción sobre los méritos de una controversia una vez se expide su mandato. No obstante, ello no implica que quede desprovisto de autoridad para intervenir posteriormente con el propósito de hacer valer lo previamente ordenado. Esa facultad no altera lo adjudicado, por el contrario, garantiza su eficacia. En ese sentido, se trata de una manifestación de la potestad inherente de los tribunales para proteger la integridad de sus procesos y asegurar que sus pronunciamientos no queden en letra muerta.

En este caso, ante un señalamiento claro de incumplimiento por parte del foro primario, la función del Tribunal de Apelaciones tenía que ser asegurar la ejecución de lo ya dispuesto. Además, desde una perspectiva más amplia, debemos tener en cuenta el impacto que tiene el incumplimiento de los mandatos sobre la economía procesal y el acceso a la justicia. Cada vez que una parte se ve obligada a recurrir nuevamente a los tribunales para hacer valer un dictamen previo, se incrementan los costos, se prolonga el litigio y se debilita la percepción de certeza en nuestro sistema de justicia.

Sin duda, el mandato no es una sugerencia, sino una orden que define los parámetros dentro de los cuales debe continuar el litigio. Su cumplimiento no solo asegura la

coherencia del caso particular, sino que preserva la estabilidad del aparato judicial.


                              Raúl A. Candelario López
                                   Juez Asociado